## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LUIS BULTRON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. A. No. 06-708-GMS |
| | ) |
| PERRY PHELPS, Warden, and | ) |
| ATTORNEY GENERAL OF THE | ) |
| STATE OF DELAWARE, | ) |
| | ) |
| Respondents.[1] | ) |

———— ————

Luis Bultron. *Pro se* petitioner.

James T. Wakley, Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware. Attorney for respondents.

———— ————

### MEMORANDUM OPINION

March 31, 2010
Wilmington, Delaware

---

[1]Warden Perry Phelps assumed office in January, 2008, replacing Warden Thomas
Carroll, an original party to this case. *See* Fed. R. Civ. P. 25(d)(1).

Sleet, Chief District Judge

## I. INTRODUCTION

Petitioner Luis Bultron is an inmate at the James T. Vaughn Correctional Center in

Smyrna, Delaware. Bultron filed the pending petition for a writ of habeas corpus ("petition")

pursuant to 28 U.S.C. § 2254. (D.I. 2.) The State filed an answer in opposition.. (D.I. 11.) For

the reasons that follow, the court will dismiss Bultron's petition in its entirety without an

evidentiary hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts pertaining to the instant petition are as follows:

> Before and during his trial, Luis Bultron was dissatisfied with his public defender,
> Edmund Hillis. Hillis had suggested to Bultron that acceptance of the State's plea offer
> would be in Bultron's best interest because the State's evidence against Bultron was
> strong and he would likely be convicted at trial. Nonetheless, Hillis was prepared to
> represent him. *Bultron v. State*, 897 A.2d 758, 761 (Del. 2006).

> Bultron claimed before the Superior Court that he could not receive a fair trial,
> because Hillis did not believe in his innocence and had refused to subpoena several
> witnesses. Bultron rejected the advice from Hillis and interpreted his counsel's
> assessment of the prosecution's case as a sign that Hillis would not extend his best effort
> to provide a defense. On several occasions, both on and off the record, Hillis assured
> Bultron that he would carry out his duty to represent Bultron to the best of his ability.
> Bultron insisted he was entitled to substitute counsel because he would not receive a fair
> trial. The Superior Court denied his request to replace Hillis with new counsel.
> However, the Court granted a continuance to allow the additional witnesses Bultron had
> identified to be subpoenaed. *Id.*

> On the new trial date, a different judge presided. Hillis asked to approach the
> bench before jury selection and disclosed Bultron's ongoing abuse. Hillis said:
> My client had an application to proceed *pro se*. He's very adamant about it. He's been
> very derogatory to me, including such phrases as you fat fuck. He wants to proceed *pro
> se*. I would love for you to grant that motion. He's not cooperating with me, he won't
> listen to me. He has been reading me rules of the Superior Court about ineffective
> assistance of counsel while the jury panel is in the room. *Id.*

The trial judge instructed counsel that because the request for self-representation was untimely and disruptive, it would be heard after jury selection. Bultron asked to be heard and the jury array was escorted out of the courtroom. Bultron told the trial judge he wanted substitute counsel and that he did not ask to represent himself. The trial judge told Bultron the issue would be addressed after the jury was selected. Jury selection then proceeded with Hillis representing Bultron. *Id.*

After jury selection, the trial judge again discussed with Bultron his concerns. Bultron wanted a better plea offer which the prosecutor declined to give. Bultron then complained about Hillis and his recommendation to accept the plea offer that was made. Hillis told the trial judge he took an oath to represent clients zealously over 20 years ago and that he would do the best that he could for Bultron at the trial. The trial judge denied Bultron's request for substitute counsel. Bultron then told the trial judge he was nauseated, and Bultron was escorted from the courtroom. Before taking a recess, the trial judge asked Hillis to meet with Bultron. *Id.*

After several minutes, the court reconvened with Bultron present. Hillis reported that Bultron continued to be abusive and requested to withdraw from the representation. Hillis explained:

> Our last discussion . . . included accusations that I have been committed in the past to a mental hospital, a cross-examination concerning my finding of non-contempt in the Court by one of your colleagues and I'm just not putting up with that. I don't think I have to. He has called me a fat fuck a number of times. . . he has accused me repeatedly of lying - and he has created in matters that are privileged obstacles to an efficient representation of him that have now reached a level where I don't know what to say to this jury on his behalf. *Id.* at 761-62.

The trial judge then said:

> [t]he Court is not going to allow Mr. Bultron to bully people, including his court-appointed attorney . . . Mr. Bultron has no right to be personally abusive to anyone and as much as a public defender has to put up with, at times, ungrateful and uncooperative clients, there are limits to what the Court can force a public defender to withstand and, obviously, in this case, based on what Mr. Hillis has said and on what the Court has seen and heard, Mr. Bultron has abused Mr. Hillis enough. *Id.* at 762.

After hearing Bultron's denial of Hillis' claim, the trial judge continued:

> I'm satisfied as the finder of fact, having heard both you and Mr. Hillis discussing this matter in Court, that I believe Mr. Hillis' version of what took place and that is abusive behavior that is simply not going to be tolerated by the Court.
> Now, this is the way it is going to be, Mr. Bultron. This trial is going forward.

3

> It's not going to be continued a second time. If you think that it might be
> productive, I will send the jury to lunch now and let you speak to Mr. Hillis for a
> few moments during the lunch break to see if you and he can reach an agreement
> that's acceptable to both of you with respect to him continuing to be your attorney
> in this trial. But if you and he cannot make your peace, then based on how we got
> to this situation, and that's been discussed at length now in Court, the court is not
> going to force Mr. Hillis to be returning and the Court is not going to appoint you
> a new attorney and that's the way that that is going to be.

Bultron declined to speak with Hillis to make peace. The trial judge then permitted Hillis
to withdraw. The trial proceeded with Bultron representing himself. *Id.*

In October 2004, a Delaware Superior Court jury convicted Bultron of second degree

burglary and misdemeanor theft. The Superior Court sentenced Bultron as an habitual offender

to the minimum mandatory term of eight years of imprisonment. *Id.* at 762. The Delaware

Supreme Court affirmed Bultron's convictions and sentence on direct appeal. *Id.*

Bultron timely filed the instant § 2254 petition, and the State filed an answer requesting

the court to deny the petition in its entirety. (D.I. 11.) Bultron's petition is ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

4

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see*

*Woodford,* 538 U.S. at 206.

## B. Standard of Review Under AEDPA

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). When a petitioner has fairly presented a federal habeas claim to the state's highest court,

and that court adjudicated the federal claim on its merits, a federal court can only grant habeas

relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of

28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its

substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115

(3d Cir. 2009).

A state court's decision is "contrary to the [Supreme Court's] clearly established

precedent if the state court applies a rule that contradicts the governing law set forth in [its]

cases." *Williams*, 529 U.S. at 405. In turn, a state court's decision is an "unreasonable

application of" Supreme Court precedent if an objective evaluation of the state court decision on

the merits reveals that the state courts did not reasonably apply the Supreme Court standard to the

5

facts of Brathwaite's case. *See* 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 412-13; *Matteo v. Sup't, SCI Albion*, 171 F.3d 877, 891 (3d Cir. 1999). This analysis involves determining "whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified. If so, then the petition should be granted." *Matteo,* 171 F.3d at 888. Although the decisions of state and lower federal courts are relevant in assessing the reasonableness of a state court's decision, "cases not decided by the Supreme Court do not serve as the legal benchmark against which to compare the state decision." *Fischetti v. Johnson*, 384 F.3d 140, 149 (3d Cir. 2004).

When reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Bultron asserts one claim in his petition, namely, that the Delaware Superior Court violated his Sixth Amendment right to counsel by determining that Bultron had forfeited his right to counsel and by permitting his counsel to withdraw without appointing new counsel. In essence, Bultron is arguing that he was forced to proceed *pro se*. Bultron exhausted state remedies for this claim by presenting it to the Delaware Supreme Court on direct appeal, and the Delaware Supreme Court denied the argument as meritless. Therefore, the court can only grant

6

federal habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, Supreme Court precedent.

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "The plain wording of this [Sixth Amendment] guarantee thus encompasses counsel's assistance whenever necessary to assure a meaningful defence." *United States v. Wade*, 388 U.S. 218, 225 (1967).

The right to counsel attaches at all critical stages in the criminal justice process, including trial and sentencing. *See Maine v. Moulton*, 474 U.S. 159, 170 (1985); *Gardner v. Florida*, 430 U.S. 349, 358 (1997). The right to counsel is fundamental and does not depend on a request by the defendant. *Gideon v. Wainwright*, 372 U.S. 335 (1963); *Carnley v. Cochran*, 369 U.S. 506, 513 (1962)("where the assistance of counsel is a constitutional requisite, the right to be furnished does not depend on a request"). Nevertheless, the right to counsel is not absolute, and a defendant may lose the right through waiver or forfeiture. *Gideon*, 372 U.S. 335 (right to counsel may be affirmatively and voluntarily waived); *Johnson v. Zerbst*, 304 U.S. 458 (1938)(a defendant's waiver of the right to counsel must be affirmative and on the record); *Illinois v. Allen*, 397 U.S. 337 (1970)(general recognition of principle that a defendant may forfeit a fundamental constitutional right by engaging in disruptive behavior); *Taylor v. United States*, 414 U.S. 17 (1973)(same).

The Delaware Supreme Court's decision in this case implicates two separate doctrines related to a defendant's Sixth Amendment right to counsel: substitution of counsel and forfeiture of the right to counsel. The court will address each issue in seriatim.

7

## A. Substitution of Counsel

"[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Consequently, the Sixth Amendment right to counsel does not guarantee a meaningful relationship between a defendant and counsel. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). In turn, although a defendant's right to counsel includes the right to counsel of one's choice, the "right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006).

Extending these principles, the Supreme Court "has recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, [] and against the demands of its calendar." *Id.* at 152 (internal citations omitted). For instance, a trial court has discretion over last minute motions for continuances made in order to secure substitute counsel, and the court is entitled to take into account the countervailing state interest in proceeding on schedule. *Slappy*, 461 U.S. at 13-14. Nevertheless, even when, as here, a defendant requests substitution of counsel just before or during trial, the trial court must ascertain the reasons for the defendant's dissatisfaction to determine if good cause for substitution actually exists. *United States v. Peppers*, 302 F.3d 120, 132 (3d Cir. 2002).

Determining if good cause exists for substitution of counsel is a factual inquiry, and the defendant must be given an opportunity to provide the court with the reason for his or her dissatisfaction. *United States v. Welty*, 674 F.2d 185, 190 (3d Cir. 1982). "Good cause" for

8

substitution of counsel is defined as a "conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with the attorney." *United States v. Goldberg,* 67 F.3d 1092, 1098 (3d Cir. 1995). A disagreement between the defendant and defense counsel over legal strategy does not constitute good cause requiring substitution of counsel, nor does a defendant's unilateral decision not to cooperate with court appointed counsel. *Id.* at 1098-99; *United States v. Gibbs,* 190 F.3d 188, 207 n.10 (3d Cir. 1999). A defendant's mere dissatisfaction with counsel also does not warrant substitution of counsel. *See United States v. Moses,* 58 Fed. Appx. 549, 555 (3d Cir. Feb. 3, 2003). Finally, if, after performing a proper inquiry, the trial court determines that good cause for substitution of counsel does not exist, then the court must "inform the defendant that he can either proceed with current counsel or represent himself." *Goldberg,* 67 F.3d at 1098.

In this case, Bultron first asked for new counsel on September 21, 2004, the original trial date. Bultron alleged that he and Hillis were "bumping heads" because Hillis refused to subpoena certain witnesses, and because Hillis believed Bultron was guilty. (D.I. 16, App. to Appellant's Op. Br. in *Bultron v. State,* No. 62,2005, at A-1 to A-2.) Hillis responded that he had just asked one of his investigators to subpoena the witnesses named by Bultron that same morning. Hillis also explained that Bultron had misunderstood their conversation about guilt, stating that

> I gave him a frank appraisal of what I thought the result of the trial was going to be, given what the defense has. As I just told him in the other room, I would never tell somebody I thought they were guilty because what I think doesn't matter. I don't get a vote. And I, for over 20 years, run my trial practice in that matter. It doesn't make any difference what I think. It does, however, make a difference that I bring to bear my professional judgment and expertise and offer a client a candid appraisal of where he is. Where this client is, as I size up the case.

9

> As I understand it, we're going to have an individual resident who is going to claim that he was at her house, came back later and then the jewelry is missing, and that her child actually sees him leave the house. He has the jewelry on him when he's arrested. His defense is that he got the jewelry in exchange for drugs and that they had done drugs together earlier in the house. Now, I make no judgment on whether he's telling me the truth or not. But I do make a judgment of how effective that's going to be a with a jury, after having addressed numerous juries over the years. I just think that that is a balloon that doesn't have enough helium in it.

> He is facing severe consequences. He's an habitual offender. The plea offer on the table is not an attractive one on it's face, because it requires him to go to jail for eight years. But if he's convicted, the potential range of penalty is from eight years to life.

> He's got a record that would suggest that he could get more than the eight years, should the State seek it. That's what I talked to him [about] before court today, if he interprets that as me thinking he's guilty, I'm prepared to try this case. I'm prepared to give it everything that I have. I'm a lawyer, not a magician, and he needs to understand that.

*Id.* at A-2 to A-3. The trial judge permitted Bultron to respond. Bultron stated that Hillis refused to introduce as additional evidence the fact that he was intoxicated on the day of his arrest, and that he was sent to the hospital. *Id.* at A-3. Bultron re-stated his complaint that Hillis believed he was guilty, and that the witnesses he named had not yet been subpeonaed. Bultron asked the court to continue the trial for a week to allow him to get the "proper legal work." The judge refused. After further discussion, the judge asked Bultron if he wished to proceed *pro se*, or proceed with Hillis. Bultron replied he wanted to proceed with Hillis, but requested a two week continuance to get his witnesses. Bultron then changed his mind and said he wished to represent himself. The trial judge rejected both offers. Bultron asserted he might as well as not participate in the trial. At that point, the trial judge stated that the best thing may be to continue the trial. All agreed, and the trial was re-scheduled for two weeks later. *Id.* at A-4 to A-10. The court instructed Bultron to take advantage of the two weeks and inform Hillis of everything he wanted to get done. Hillis stated that he and Bultron were going to meet "right now and then

10

we'll make sure we have everything lined up." *Id.* at A-10.

Two weeks later, Bultron's case proceeded to trial before a different Superior Court judge. Prior to jury selection, Hillis advised the Superior Court that Bultron was not satisfied with his representation and that Bultron wanted another defense counsel. The trial court denied the request, holding that it was untimely and disruptive. Bultron stated that he did not wish to represent himself; rather, he wanted substitute counsel. The trial court stated that jury selection would proceed with Hillis representing Bultron, but the court would hear Bultron immediately after jury selection. *Id.* at A-13 to A-14.

During jury selection, Hillis and Bultron conferred, and Hillis exercised five of Bultron's six peremptory challenges. After the jury had been seated and sworn, the Superior Court inquired about Bultron's dissatisfaction with Hillis outside of the jury's presence. *Id.* at A-19 to A-20.

Bultron essentially stated that he was dissatisfied because Hillis had been unable to convince the State to recommend three years in prison, rather than eight years. Bultron was also upset because he continued to believe that counsel was convinced of his guilt. Bultron told the court that he disagreed with defense counsel's refusal to raise the issue of Bultron's mental state and intoxication at the time of his arrest, and that Hillis failed to challenge the fact that Bultron's criminal history record listed several incorrect prior convictions. *Id.* at A-22 to A-27.

Hillis, however, explained how he had determined that any mental illness and/or intoxication issues were not viable defense strategies in these circumstances. Hillis also explained that he had been unable to locate two of the three witnesses, and that he did not call the third witness to testify for strategic reasons. As for Bultron's complaint about the habitual

11

offender issue, the prosecutor asserted that he personally prosecuted Bultron in three other felony convictions that would trigger habitual offender status, thereby rendering meaningless Bultron's complaint about the validity of other theft convictions listed in his history. *Id.* A-22 to A-27.

After hearing from Bultron and counsel, the Superior Court explained that Hillis would continue to represent Bultron and that Bultron could remain in the courtroom so long as he was not disruptive. Bultron asked to leave, and he was escorted out of the courtroom. *Id.* at A-28.

The Superior Court and both attorneys discussed the logistics of holding a trial *in absentia*, and then the Superior Court declared a recess until noon. The Superior Court asked Hillis to speak with Bultron one last time to determine if Bultron wished to be present during his trial. *Id.* at A-29.

After the recess, Hillis informed the Superior Court that Bultron wished to be present. However, Hillis asked that he be permitted to withdraw as Bultron's counsel. Hillis advised the trial court that Bultron had been abusive during past meetings as well as during his most recent meeting with Bultron. Hillis asserted that Bultron called him a "fat fuck" on a number of occasions, accused him of having been committed to a mental hospital, and accused him of lying multiple times. *Id.* Hillis then said

> my application is to be relieved of representation. It's not something that I do lightly and it's not something that I've normally done. I've never done it before in 25 years. I have persisted when people want to fire me in maintaining that they don't get to choose who their lawyer is, they just get to have a lawyer who's competent, and I am certainly that. However, one reaches a limit when one is treated a certain way where I'm not confident anymore that I can do what I normally do, which is to fight as vigorously as I possibly can.
>
> And so, ultimately - perhaps I hadn't expressed it as well earlier, but for Mr. Bultron's benefit and certainly for the Court's benefit, ultimately the issue here for me is not whether I'm going to be inconvenienced or have my feelings hurt or have my blood pressure rise, which is not a good thing. The issue is whether or not I can fulfill with a

12

good conscience my obligation to every client, which is to be as zealous as possible.

\*        \*        \*        \*        \*

I just have reached a point today where my emotional state is such that - that I took an oath to do as much as I could for every client and I can't - I don't know if I can do that for this man because he has treated me with disrespect, he has accused me repeatedly of lying and - he has created in matters that are privileged obstacles to an efficient representation of him that have now reached a level where I don't know what to say to this jury on his behalf.

*Id.* at A-30.

The Superior Court stated that Hillis was one of the most senior attorneys in the Public

Defender's Office and noted that Hillis had never asked to be relieved from any other case. The

Superior Court then opined

[t]he Court has carried out its obligation to provide Mr. Bultron with court-appointed counsel and Mr. Bultron, by his offensive behavior has, in effect, waived his right to [a] court-appointed attorney.

That brings us to the question of how do we proceed from here? Mr. Bultron has not asked to represent himself and he's indicated that he does not feel qualified to represent himself. Just as he's tried to intimidate Mr. Hillis, he's trying to force the Court to give him an attorney to his liking. And by the way, there's no indication that any attorney that replaces Mr. Hillis is going to do any better with Mr. Bultron.

We're going to go forward. Mr. Bultron, if you want to participate in the trial acting as your own attorney, you'll have to do that. If you cannot behave in Court, then you'll be tried *in absentia*, meaning that you will not be part of the trial.

The Court does not want that to happen. The Court did not want to relieve Mr. Hillis, but you've behaved in such a way that the Court has no choice with respect to Mr. Hillis. And if you misbehave in Court, it will have no choice with respect to you being present in the courtroom.

As [the State] pointed out, the case has already been continued once on the day of trial because of disruptions. Rescheduling the case a second time offers little prospect of an orderly trial, so we have to do the best we can under the circumstances. If you'd like to be present, Mr. Bultron, that's your option. What would you like to say?

*Id.* at A-30 to A-31. Bultron stated that he would like to be present. *Id.* at A-31. The Superior

13

Court gave Bultron one more opportunity to speak with Hillis about representing him. Bultron refused. Hillis exited the courtroom, and Bultron represented himself without incident.

On direct appeal, the Delaware Supreme Court explained that a defendant's "mere dissatisfaction with his counsel does not, by itself, justify the appointment of different counsel. While a defendant has a right to counsel, he does not have a right to counsel who will not disagree with him about how best to proceed with his case. Bultron has shown only that he was dissatisfied with Hillis. The Superior Court did not abuse its discretion in denying Bultron's requests to appoint substitute counsel." *Bultron,* 897 A.2d at 763.

In this case, even though the Delaware Supreme Court did not specifically apply United States Supreme Court precedent and its progeny in holding that the Superior Court properly refused to appoint new counsel, the Delaware cases cited by the Delaware Supreme Court refer to the applicable precedent and properly articulate the parameters of a defendant's right to substitution of counsel. Consequently, the court concludes that the Delaware Supreme Court's decision was not contrary to clearly established Federal law. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008)(Supreme Court of Pennsylvania's decision was not "contrary to" clearly established Federal law because appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent).

The court's inquiry is not over, however, because it must also determine whether the Delaware Supreme Court's decision involved an unreasonable application of Supreme Court precedent to Bultron's case. To begin, the court notes that nothing in the record indicates that Hillis was unprepared or in any other way inadequate as counsel. Moreover, nothing in the record indicates that the Superior Court abused its discretion in refusing Bultron's request for

14

substitute counsel. The Superior Court permitted Bultron to explain his problems with Hillis,

considered Bultron's concerns, and found that Bultron's complaints about Hillis' trial strategy

did not warrant substitution of counsel or another continuance to obtain new counsel, because

those complaints concerned Hillis' trial strategy. The record supports this conclusion. In

addition, the court independently notes that the record supports a conclusion that Bultron

unilaterally failed to cooperate with Hillis.

Thus, after viewing the foregoing record in light of the Supreme Court's determination

that the Sixth Amendment does not guarantee a "meaningful relationship" between the defendant

and counsel, the court concludes that the Delaware Supreme Court did not unreasonably apply

Supreme Court precedent in affirming the Superior Court's decision. Accordingly, the court will

deny Bultron's substitution claim for failing to satisfy § 2254(d).

### B. Forfeiture of Counsel

Given the Superior Court's proper refusal of Bultron's request for substitute counsel, the

Superior Court also correctly presented Bultron with two choices: cooperate with Hillis or

proceed *pro se. Welty*, 674 F.2d at 187. Bultron refused to cooperate with Hillis, and even

though Bultron continually stated that he did not wish to represent himself, the Superior Court

required Bultron to proceed *pro se.* The Superior Court explained this "uncharacteristic

decision" in its "post-trial and sentencing memorandum," by first articulating the difference

between waiver, forfeiture, and waiver by conduct in the "evolving body of federal law . . .

concerning waiver or forfeiture of the constitutional right to counsel." (D.I. 16, "Post-Trial And

Sentencing Memorandum" in *State v. Bultron*, ID No: 0403006285, at pp. 2, 13, 15.) The

Superior Court explained, in relevant part, that

15

"[w]aiver" requires that defendant knowingly, voluntarily, and intelligently relinquish his right to counsel. In order for waiver to be effective, the court must engage defendant in a colloquy and explain the difficulties and dangers of proceeding *pro se.* This is not a "waiver" case.

"Waiver by conduct" occurs when defendant has been warned that he will lose his attorney if he engages in further misconduct, and defendant ignores the warning. Any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel. . . . The purpose of a *Faretta/Welty* colloquy is to provide the defendant with notice that continued misconduct may result in the waiver of one's right to counsel; thus, we focus on whether defendant was warned of the possible consequences, not whether the warning immediately preceded the trial court's order that the defendant must proceed *pro se.*

"Forfeiture" does not require that defendant knowingly and intentionally relinquish his right to counsel; rather, it results when defendant engages in extremely serious misconduct, such as physically assaulting his appointed counsel. No warning is necessary to trigger forfeiture.

*Id.* at pp. 14-15 (internal citations omitted). The Superior Court then concluded that Bultron had both forfeited and waived by conduct his right to counsel. *Id.*

On direct appeal, the Delaware Supreme Court held that the record did not support a finding that there was a valid waiver of the right by conduct because the trial court did not give Bultron complete *Faretta* warnings. *Bultron*, 897 A.2d at 765. However, the Delaware Supreme Court did affirm the Superior Court's holding that Bultron forfeited his right to counsel, holding that Bultron's actions constituted "extremely serious misconduct," and that Bultron "intended to force his attorney to withdraw to prevent his trial from going forward after the Superior Court had denied Bultron's request for substitute counsel." *Bultron*, 897 A.2d at 766. The Delaware Supreme Court based this conclusion on "Bultron's continuing profanity and insulting conduct directed toward his counsel after jury selection and his refusal to make peace with counsel," explaining that

the appointment of substitute counsel during Bultron's trial would have required a

16

> mistrial, and consequently prevented Bultron's trial from going forward. Intentional misconduct for the purpose of forcing counsel to withdraw so that the trial cannot proceed is plainly obstructive to the administration of justice. The record supports the legal conclusion that Bultron forfeited his right to counsel by his conduct.

*Id.*

In affirming the Superior Court's judgment, the Delaware Supreme Court acknowledged that there was no Supreme Court decision explicitly recognizing the principle of forfeiture of counsel. *Id.* at n. 21. However, the Delaware Supreme Court opined that "the cases of *Illinois v. Allen*, 397 U.S. 337 (1970) and *Taylor v. United States*, 414 U.S. 17 (1973) lead us to conclude that obstructive conduct by a defendant that has the potential of preventing a trial from going forward may result in the forfeiture of the right to counsel." *Id.* (citing *Wilkerson*, 412 F.3d at 454-56 and *Fischetti*, 384 F.3d at 151.)

In order to perform the proper inquiry required by § 2254(d), the court must first discuss the "evolving body of federal law" regarding waiver and forfeiture of a constitutional right upon which the Delaware state court's based their decisions. A "waiver is an intentional and voluntary relinquishment of a known right," and the Supreme Court has explicitly held that a defendant can voluntarily and intelligently *waive* the the right to counsel. *Faretta v. California*, 422 U.S. 806, 814-15 (1975) (recognizing a defendant's right to waive counsel and proceed *pro se*); *Cross v. United States*, 325 F.2d 629, 631-32 (1963); *United States v. Goldberg*, 67 F.3d 1092, 1099 (3d Cir. 1995). In order to be valid, a defendant's waiver of the right to counsel must be affirmative and on the record. *See Johnson*, 304 U.S. 458. "At the other end of the spectrum is forfeiture . . . . which results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *Goldberg*, 67 F.3d at 1099. The Supreme Court has never addressed a case involving a defendant's *forfeiture* of the

17

right to counsel. Nevertheless, the Third Circuit has opined that the "Supreme Court precedents [of *Taylor v. United States*[2] and *Illinois v. Allen*[3]][]provide[] a basis to conclude []that defiant behavior by a defendant can properly cost that defendant some of his Sixth Amendment protections if necessary to permit a trial to go forward in an orderly fashion." *Wilkerson v. Klem*, 412 F.3d 449, 453-454 (3d Cir. 2005). As a result, a court in this circuit may find that a defendant has forfeited his or her right to counsel after having engaged in extremely dilatory conduct or extremely serious misconduct, or when the defendant has been abusive toward counsel. *See United States v. Thomas*, 357 F.3d 357, 362 (3d Cir. 2004); *Goldberg*, 67 F.3d at 1099. Indeed, "[f]orfeiture can be found regardless of whether the defendant has been warned about engaging in misconduct, and regardless of whether the defendant has been advised of the risks of proceeding *pro se*."[4] *Thomas*, 357 F.3d at 362. However, a trial court's finding of forfeiture cannot be based entirely on evidence presented at an *ex parte* hearing; rather, the defendant must given an opportunity to contest a finding of forfeiture in an adversarial

---

[2] When holding that a defendant may waive right to be present at trial by voluntarily failing to return to court after recess, the *Taylor* Court quoted from Justice Brennan's concurrence in *Allen*, noting that "the governmental perogative to proceed with a trial may not defeated by conduct of the accused that prevents the trial from going forward." *Taylor*, 414 U.S. at 20.

[3] In holding that a defendant may forfeit right to be present at trial by engaging in disruptive behavior, the Supreme Court in *Illinois v. Allen* explained that "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *Allen*, 397 U.S. at 343.

[4] The court further notes that other circuit courts have also relied on the general principle of forfeiture articulated in *Taylor* and *Allen* when holding that defendants who unreasonably refuse to cooperate with and/or abuse counsel have forfeited the right to counsel. *United States v. Thompson*, 335 F.3d 782, 785 (8th Cir. 2003); *Gilchrist v. O'Keefe*, 260 F.3d 87, 92, 97 (2d Cir. 2001); *United States v. McLeod*, 53 F.3d 322, 325 (11th Cir. 1995).

proceeding. *See United States v. Leggett*, 162 F.3d 237, 250-51 (3d Cir. 1998).

After reviewing Bultron's forfeiture argument within the framework provided by the aforementioned caselaw, the court concludes that the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law. To begin, given the absence of any Supreme Court precedent governing the precise issue of forfeiture raised in this case, the court cannot conclude that the Delaware Supreme Court's decision to affirm Bultron's conviction and sentence was contrary to clearly established Federal law. *See Fischetti*, 385 F.3d at 150. In turn, the court also cannot conclude that the Delaware Supreme Court unreasonably applied Supreme Court precedent in reaching its decision that Bultron forfeited his right to counsel. As explained by the Third Circuit in *Fischetti*,

> appellate cases [from the second, fifth, seventh, and eleventh circuits] establish that the Supreme Court's general right to counsel decisions are reasonably read as qualified by the trial court's power to remedy abuse of that right by forfeiture. Further, none of these [] appellate cases saw in the Supreme Court precedents any clear guidance as to the precise standard to be applied before forfeiture can be triggered. Put another way, the Supreme Court has not fully defined when a defendant's misconduct or defiance warrants a forfeiture. Our canvass of decisions of our own and sister courts reinforces our view that the state court order that Fischetti proceed without counsel was not an objectively unreasonable application of Supreme Court case law under the Sixth Amendment.

*Fischetti*, 384 F.3d at 152.

In this case, the record demonstrates that the conflicts described by Bultron regarding defense counsel were of his own making, and involved serious and abusive conduct on Bultron's part. On several occasions, the trial judge warned Bultron that his continued misconduct would lead to a choice: reconcile his differences with counsel or proceed *pro se*. Bultron did not reconcile with counsel, and actually continued to verbally abuse counsel until counsel felt he had no choice but to ask permission to withdraw.

The record also shows that the Superior Court provided Bultron with an opportunity to contest its finding of forfeiture. Bultron told the Superior Court that he did not "try to abuse" Hillis; rather, he only asked a few questions. The Superior Court judge then stated, "let me make sure I understand what the facts are. Mr. Hillis said that you made a derogatory comment about his build, you called him fat and then added a word to it that was even more unpleasant. Now, is that true or not?" . (D.I. 16, App. to Appellant's Op. Br. in *Bultron v. State*, No. 62,2005, at A-31.) Bultron responded that he never called Hillis fat, and that he was "trying to make sure somebody was listening to make sure anything I said was heard." *Id.* The Superior Court judge then stated that he was "satisfied as a finder of fact, having heard both you and Mr. Hillis discussing this matter in Court, that I believe Mr. Hillis' version of what took place and that is abusive behavior that is simply not going to be tolerated by the Court." *Id.* Significantly, even after determining that Bultron had forfeited his right to counsel, the Superior Court still gave Bultron one last chance "to reason peacefully with Mr. Hillis" if Hillis agreed to meet with him. *Id.* at A-31 to A-32. Bultron refused, and Hillis left the courtroom.

Viewing the record in context with the Supreme Court's general recognition that a defendant may forfeit other fundamental constitutional rights due to serious misconduct and in context with the absence of a clear standard for determining when forfeiture occurs, the court cannot conclude that the Delaware Supreme Court unreasonably applied Supreme Court precedent in reaching its decision that Bultron forfeited his right to counsel. Therefore, Bultron's argument regarding his forfeiture of counsel does not warrant habeas relief. Accordingly, the court will deny Bultron's petition in its entirety.

20

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also

decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2(2008).  A

certificate of appealability is appropriate when a petitioner makes a "substantial showing of the

denial of a constitutional right" by demonstrating "that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2);

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court concludes that Bultron's petition does not warrant federal habeas relief.

Reasonable jurists would not find this conclusion to be debatable, and therefore, the court

declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Bultron's petition for habeas relief pursuant to 28 U.S.C. § 2254 is

denied, and a certificate of appealability will not be granted.  An appropriate order shall issue.

21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LUIS BULTRON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 06-708-GMS |
| | ) | |
| PERRY PHELPS, Warden, and | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. Petitioner Luis Bulton's petition for the writ of habeas corpus filed pursuant

to 28 U.S.C § 2254 is **DISMISSED**, and the relief requested therein is **DENIED**. (D.I. 2.)

2. The court declines to issue a certificate of appealability due to Bultron's failure to

satisfy the standards set forth in 28 U.S.C. § 2253(c)(2).

Dated: March 31, 2010

CHIEF, UNITED STATES DISTRICT JUDGE